# RUFUS HAYWOOD

*v.*

# WATSON COLLINS *et al.*

1. ATTACHMENT—*notice—certificate of publication—judgment.* Where a writ of attachment was· sued out against a non-resident, sent to another county, levied upon lands, but returned not found as to the defendant, a judgment was rendered at the return term against the defendant, but the court did not find there was notice, either actual or constructive, and there was no personal service, and the notice of publication filed did not purport to be signed by the publisher or printer of a newspaper·: *Held,* the notice was fatally defective, and the court thereby acquired no jurisdiction of the person of defendant, and the judgment was void.

2. NOTICE. It is a principle of natural justice that a person must have notice of some kind before his property shall be bound by a judicial sentence. Without this principle is enforced, the right to possess and enjoy property can not be sustained, and our attachment law has, in accordance with this well settled rule, required notice, either by service or by publication.

3. SAME—*service.* Proof of publication may be made in some other mode than by a certificate of the printer or publisher, but when the latter mode is adopted it must conform to the requirement of the statute. The certificate of a person not appearing to be the printer or publisher of·a newspaper, does not comply with the statute; nor will any presumption be indulged, but the fact must appear. And where there is not a proper certificate, and the court does not, in its judgment, find that notice of some kind was given, the judgment can not be sustained.

4. JURISDICTION—*circuit court.* The general jurisdiction of the circuit courts extends to all matters and suits at common law and in chancery; and when so acting it is a court of superior jurisdiction, and the rule is, that nothing shall be intended to be out of the jurisdiction of such a court but that which appears to·be. Where a court of superior jurisdiction exercises statutory and extraordinary powers, it stands on the ground and is governed by ·the same rules as. courts of limited jurisdiction, which is, that nothing shall be intended to be within the jurisdiction but that which is so expressly alleged.

5. ATTACHMENT—*common law.* An attachment is not a proceeding at common law; it exists and is conferred alone by the statute, and is in derogation of the common law. It derives all its validity from the statute, and in all essential particulars must conform to its requirements, and where

there is not personal service, notice by publication is as essential to juris-
diction as the issue of the writ and the levy on property, and the author-
ity must be strictly pursued.

6. LEVY ON PROPERTY—*jurisdiction.* By a levy of the writ on prop-
erty, the court acquires jurisdiction of the subject matter, but there must
also be jurisdiction of the person of the defendant in some of the modes
known to the statute, and without it the judgment will be void, and its
validity may be questioned collaterally. And the facts showing jurisdic-
tion must appear on the face of the proceedings.

7. SUMMARY PROCEEDINGS—*strictness required.* In summary proceed-
ings in courts, under a special statute prescribing the course to be pursued,
that course ought to be exactly observed, and those facts, especially, which
give jurisdiction, ought to appear, in order to show that the proceedings
are *coram judice.*

8. JUDGMENT—*attachment—notice—certificate—amendment.* Where a
judgment in attachment was rendered without evidence of publication,
and without personal service, and error was prosecuted and the judgment
reversed and the cause remanded, and the note upon which the judgment
was rendered was withdrawn and no further trial was had in the attach-
ment case, and the defendant in the attachment suit filed a bill to set aside
the deeds on a sale under the judgment in attachment as a cloud on his
title, and after the bill was filed, plaintiff in the attachment, ten years after
the rendition of the judgment, on leave of the court, but without notice to
defendant, filed an amended certificate of publication : *Held,* that the judg-
ment being reversed and the cause remanded, and no trial subsequently
had, there was no judgment existing; the amendment did not revive it.
The plaintiff should have re-docketed the suit in the court below, and by
proof on the trial, or by default, obtained another judgment, and *failing to
do so for such a length of time, there was an abandonment of the cause.*
But had the case been reinstated after it had gone from the docket five
years, notice should have been given to the defendant.

The suit was in attachment, and it was under the statute that it com-
menced and progressed, and the reversal of the judgment did not change it
to a common law proceeding; the judgment, as it stood when the sale was
made, was under the statute and must be tested by its provisions, and if
void, the purchaser acquired no title.

9. SERVICE BY PUBLICATION—*parol evidence.* Where there has been an
effort to procure service by publication, and the publisher's certificate is
insufficient, the judgment reversed, and the defendant files a bill to set
aside sales under the judgment as a cloud on his title, the judgment which
was void for want of proof of service can not be rendered valid by the evi-
dence of the printer or publisher that the publication was legally made;
that must appear from the certificate of the printer or publisher, or by the

finding of the court. It can not be shown by parol in a collateral proceeding. To permit it, would be violative of all the rules of evidence; would destroy all the safeguards to purchasers at judicial sales; render records useless, and open wide the door to fraud and perjury.

APPEAL from the Circuit Court of Cook county.

This was a bill in chancery, filed by Rufus Haywood in the circuit court of Cook county, against Watson Collins, Nathan B. Gladding, Allen Bacon, John M. Ware, Henry J. Goodrich, Charlotte P. Goodrich and Moses D. Wells, for the purpose of having deeds of conveyance of lands they claimed set aside as a cloud on title to his lands. It is claimed that the judgment in attachment against complainant, and under which the lands were sold, was void for want of service on complainant, either actual or constructive.

Defendants filed their answer to the bill, a trial was had, and the court, after hearing the evidence, refused the relief and dismissed the bill at the costs of complainant; and from that decree he appeals to this court.

Messrs. BENNETT & VEEDER, for the appellant.

Messrs. SLEEPER & WHITON, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

We propose to consider two questions:

*First*—Was the judgment of the circuit court of Coles county void or only voidable?

*Second*—Does the record of the court, as amended in 1870, afford evidence of the due publication of notice?

In May, 1860, proceedings in attachment were commenced in the Coles county circuit court against appellant and one Bane.

Appellant was a resident of New York, and Bane resided in Coles county.

A writ of attachment was issued and directed to the sheriff of Cook county, levied upon the real estate in controversy

as the property of appellant, and returned "not found" as to the defendants.

At the October term of the court, in the year 1860, judgment was rendered against appellant and Bane, by default; but the court did not find that any notice had been given to appellant, either actual or constructive. The only pretended notice of the pendency of the attachment was, by publication. Conceding that the court might have received other proof of the fact of publication than the certificate of the publisher, the record does not so state.

The certificate attached to the notice did not purport to have been made either by the printer or publisher of any paper.

In *Haywood* v. *McCrory*, 33 Ill. 459, this notice was held to be fatally defective. Beckwith, J., in delivering the opinion of the court, said : "The record of the judgment fails to show that notice was given of the pendency of the suit; and the certificate of publication on file is not such an one as the statute requires. It does not purport to be made by the printer or publisher of any newspaper. In suits by attachment, where there is no personal service upon the defendant, in order to sustain the judgment the record must show affirmatively that the prerequisite of the statute in regard to notice by publication was complied with." The judgment in the case was accordingly reversed.

Counsel for appellees insist that this judgment of reversal is the only erroneous judgment given in this case.

The force of the remark we can not appreciate ; of its fitness and good taste, others must judge.

The implied rebuke, however, shall not deter us from an adherence to the opinion, as it is in consonance with good sense and essential to secure the rights of property.

By virtue of executions issued upon this judgment, a large amount of the real estate of appellant has been sold. It appears, from the record in this case, that the note upon which the judgment was founded was either a forgery, or at least

made without the authority of appellant. After the judgment in 1860, the note was withdrawn from the circuit court of Coles county, and a suit instituted against appellant in the State of New York, on the trial of which the payee of the note was defeated.

The circumstances, therefore, appeal to our sense of justice, and incline us to afford the relief prayed for if consistent with the well established principles of law. A man's property has been seized for a pretended debt, and sales made without any actual notice to him, until the time had matured for the execution of the deed and it had been executed and delivered.

It is a principle of natural justice that a man must have notice of some character before his property shall be bound by a judicial sentence. Without the existence and enforcement of this principle, the right to possess and enjoy property can not be sustained.

Our attachment law, in accordance with this settled rule, requires notice by publication in some newspaper, when the writ of attachment has been levied upon property or served upon a garnishee, and has been returned not found as to the defendant.

What shall be the proof of publication? It may be made in some other mode than by the certificate of the printer or publisher, but when the latter mode is adopted it must conform to the requirement of the statute, which provides that the certificate of the printer or publisher shall be evidence of publication. R. S. 1845, 47.

·Therefore, a certificate of some person which does not show that he was printer or publisher, is not in compliance with the statute. No presumption is to be indulged, but the fact must affirmatively appear. Any other construction would permit any one, without knowledge of the fact of publication, to give the certificate.

There was, then, no sufficient notice of publication, tested by the requirement of the statute, and the court, in its judgment, did not find that notice of any kind had been given.

In determining the presumptions which may aid such a judgment, we must inquire into the character and jurisdiction of the court which rendered it.

The general jurisdiction of the circuit courts is over all matters and suits at common law and in chancery.

When acting within the scope of its general powers, a circuit court is a court of superior jurisdiction. The rule is, that nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so. *Peacock* v. *Bell*, 1 Saund. 69.

But when a superior court exercises a special statutory and extraordinary power, it stands upon the same ground and is governed by the same rules as courts of limited and inferior jurisdiction. The rule then is, that nothing shall be intended to be within the jurisdiction but that which is so expressly alleged. *Peacock* v. *Bell*, *supra.*

In proceedings by attachment, is the circuit court acting within the scope of its general powers, or is it exercising a special statutory power? It will not be contended that, at common law, this summary and extraordinary remedy could be pursued. It exists and is conferred alone by the statute, and is in derogation of the common law.

An attachment derives all its validity from the statutes, and in all essential particulars must conform to their requirements. *Cariker* v. *Anderson*, 27 Ill. 358; *Rowley* v. *Berrian*, 12 Ill. 198; *Vairin* v. *Edmonson*, 5 Gilm. 270; *Lawrence* v. *Yeatman*, 2 Scam. 15.

Where there is not personal service, the statute requires that there must be notice by publication. This is as essential to jurisdiction as the issue of the writ and the levy upon property.

In this summary proceeding, by which the citizen is deprived of his property without actual notice; without trial, except by an idle form; by which his entire estate may be taken in payment of a feigned indebtedness—a proceeding

entirely *ex parte*—the authority for such remedy should be strictly pursued.

The levy upon property by the writ of attachment gives jurisdiction of the subject matter, but there must also be jurisdiction of the person, in some of the modes required by the statute. If this jurisdiction does not exist, the judgment is void, and its validity may be inquired into collaterally.

In this case there is nothing in the judgment, by recital, to indicate notice, and the only evidence in the record is the defective certificate. The facts, necessary to give jurisdiction, do not appear upon the face of the proceedings. If the facts must affirmatively appear, then the judgment is a nullity; concludes no one; and may be rejected whenever collaterally drawn in question.

That the validity of a judgment may be questioned in a collateral proceeding, has often been decided by this court.

In *Goudy* v. *Hall*, 30 Ill. 109, it was decided that the decree of a county court authorizing the sale of land, was absolutely void if the notice required by the statute had not been given; and that its validity might be inquired into when the record was offered in an ejectment suit.

In *Miller* v. *Handy*, 40 Ill. 448, the court said, if there was not jurisdiction to render the judgment offered in evidence in defense, then all the proceedings were *coram non judice*, and they may be attacked collaterally in an action of ejectment.

In *Campbell* v. *McCahan*, 41 Ill. 45, it is said that there must be jurisdiction of both the subject matter and of the person, to give validity to judgments; and if jurisdiction is not acquired, the judgment is void and may be resisted successfully, either in a direct or collateral proceeding.

To the same effect is the case of *White* v. *Jones*, 38 Ill. 160.

In *Clark* v. *Thompson*, 47 Ill. 26, it was held that the presumption in favor of the jurisdiction, even of a court of general jurisdiction, may be rebutted in all collateral proceedings; and when there is no finding of the court, the presumption will be that it acted upon the summons and return which do appear in the record.

In the case at bar there was no finding by the court, and the inference is that it assumed jurisdiction of the person of appellant by virtue of the defective certificate.

In *Huls* v. *Buntin*, 47 Ill. 396, the suit was ejectment, and the defendant claimed title by virtue of a sale by an administratrix, under a decree of court. It was held that, if the court did not have jurisdiction, the decree was not binding, and could be attacked collaterally.

This court has frequently held that the county courts, though of limited, are not of inferior, jurisdiction, as distinguishing inferior from superior courts. *Propst* v. *Meadows*, 13 Ill. 157 ; *Clark* v. *Thompson, supra.*

We will refer to some authorities in other States which recognize the rule that superior courts, when in the exercise of a special statutory authority, are not entitled to the same presumptions in favor of their judgments as when in the exercise of their general powers.

In an action of ejectment, the record of a court of general jurisdiction was offered in evidence. In making the record, the court exercised a special power created by statute. It was held, that it *must appear by the record* that the statute had been complied with, or the judgment could have no binding effect. *Denning* v. *Corwin*, 11 Wend. 648.

In *Striker* v. *Kelly*, 7 Hill, 10, an action of covenant was brought upon a lease to recover rent. The defense was, that the greater part of the land demised had been charged by an assessment to pay the expense of opening Ninth avenue in the city of New York. By a statute, the Supreme Court appointed commissioners, who assessed the land, and their report was confirmed by the court, and the land was sold. It was held, that the powers conferred were judicial, and were given to the court; but that, in the discharge of the duties imposed, the general powers of the court were not exercised, but only those derived from the statute, and that the proceedings must be treated like those of a court of special and limited jurisdiction.

In *Thatcher* v. *Powell et al.* 6 Wheat. 119, ejectment was brought. The defendants, to support their title, read in evidence the transcript of a record of a court of general jurisdiction, made while in the exercise of a special statutory power.

Amongst other things, the statute required publication. Ch. J. MARSHALL, in delivering the opinion of the court, said: "These publications are indispensable preliminaries. They do not appear to have been made. The judgment was given without it appearing, by recital or otherwise, that the requisitions of the law had been complied with. We think this ought to have appeared in the record.

"In summary proceedings, where a court exercises an extraordinary power under a special statute, prescribing its course, we think that course ought to be exactly observed; and those facts, especially, which give jurisdiction, ought to appear, in order to show that its proceedings are *coram judice.*"

The judgment was held to be absolutely invalid.

In *Williamson* v. *Ball*, 8 How. 566, and *Williamson* v. *Berry*, ib. 495, it was held that a court of chancery, under its general powers, had no authority to decree a sale of the real estate of a minor; and that, when acting for such purpose under a special statute, it must pursue, strictly, the enactment, or no title will pass to the vendee thereunder, or to a subsequent *bona fide* purchaser.

As illustrative of the principles of the foregoing authorities, we refer to the following cases: *Latham* v. *Edgerton*, 9 Cow. 227; *Rogers* v. *Dill*, 6 Hill, 415; *Bloom* v. *Burdick*, 1 Hill, 130; *Mills* v. *Martin*, 19 Johns. 7; *Jackson* v. *Esty*, 7 Wend. 148; *Dakin* v. *Hudson*, 6 Cow. 221; *Borden* v. *Fitch*, 15 Johns. 121; *Bigelow* v. *Stearns*, 19 Johns. 39.

The rule, that the exercise of unusual and extraordinary powers will be subjected to the strictest scrutiny, will have a salutary effect. It imposes some restraint upon powers dangerous to the citizen, and which should never be granted or exercised without absolute necessity.

The very security of property requires notice of some kind to the owner before he should be deprived of it. Justice can never be administered, in its true spirit, when either the person or property is condemned without notice.

No case can better illustrate the necessity of legal scrutiny in this class of remedies, than the one under consideration.

Judgment was obtained against a man without any personal notice, and that judgment was based upon a note, either forged or made without any authority, by the co-defendant of appellant, in the attachment, and thus it is attempted to deprive him of a large amount of property.

This was an extraordinary remedy, and the record must state that satisfactory evidence of the notice was heard by the court, or it should contain sufficient evidence itself. *Fayles* v. *Kelso,* 1 Black. 215; *O'Brien* v. *Daniel,* 2 Black. 291; *Leach* v. *Swan,* 8 ib. 68.

No distinction can justly be taken between this case and decrees directing the sale of lands to pay debts, upon the application of administrators.

Yet, this court has invariably held, that if notice of the latter proceeding has not been served or given in the mode required by the statute, the decree to sell lands will be void, and may be questioned in both direct and collateral proceedings. *Clark* v. *Thompson, supra; Schnell* v. *City of Chicago,* 38 Ill. 383; *Morris* v. *Hogle,* 37 Ill. 150.

Counsel for appellees contend that the levy of the writ of attachment conferred jurisdiction over the land, gave power to compel the appearance of appellant, and to render judgment and order a sale of the land, just as much as personal service upon his co-defendant gave jurisdiction to render a personal judgment against the latter.

They further contend, "that the failure to give the notice required by the statute, did not deprive the court of its jurisdiction over the subject matter; nor of its jurisdiction and power to issue the writ; nor of the jurisdiction over the

22—60TH ILL.

property acquired by the service of the writ upon it, to give judgment against it."

This argument effectually wipes out the provision of the statute which requires notice ; for, if a judgment can be rendered upon the mere attachment of property, there is no necessity for notice in any case.

The statute requires that, upon the return of the writ of attachment, the clerk shall give notice. We are not disposed, if we had the power, to abrogate this wise provision of the law.

The service of the writ only gave jurisdiction over the land, and not over the person. Both must exist prior to the judicial sentence.

The attachment is a lien from the date of the levy only when followed by a judgment, and the latter can never be properly rendered without due notice. *Martin* v. *Dryden,* 1 Gilm. 187 ; *Jones* v. *Jones,* 16 Ill. 117.

The facts in the cases cited, of *Pierce* v. *Carleton,* 12 Ill. 358, and *Dukes* v. *Rowley,* 24 Ill. 210, are somewhat different from the facts in the case under consideration.

In the case in 12 Ill. the record recited that *due proof of publication* had been made. The court found that the statute had been complied with, and this finding might be the result of parol proof in such a case, but could not if the service had been by summons. The presumption was based upon the finding of the court.

So, in the case in 24 Ill., the judgment showed that due notice by publication had been given ; but the court decided against the tax title because the certificate of publication had not been recorded as required by the statute. This effectually disposed of the deed as evidence of title, and the subsequent remarks as to the sufficiency of the certificate were unnecessary and were *obiter dicta,* and were virtually overruled in *Haywood* v. *McCrory, supra.*

Any attempt to review the cases cited by appellees, would extend this opinion to an unreasonable length. There is a

conflict between the authorities, and any effort to reconcile them would prove futile.

In the view we have taken, and in the light of the authorities referred to, the judgment of the circuit court of Coles county must be pronounced void.

We propose to consider next the effect of the amended record.

The record shows the following state of facts :

The judgment was rendered at the October term, 1860, of the Coles circuit court. In 1864 a writ of error was prosecuted to this court, and the judgment was reversed and the cause remanded. In July, 1865, the note was withdrawn from the files of the court and a suit prosecuted upon it in the State of New York.

At the October term, 1870, of the Coles circuit court, a motion was made to re-docket the cause, and then the following order was made : "Whereupon plaintiff produces publisher's certificate, and leave is granted to file the same. And from said certificate and evidence of publisher, the court is satisfied as to the proof of publication, etc."

There is no evidence in the record that any notice was given to appellant of the intention to make this motion, and it does not appear that he was present.

The entry was made more than one year after the filing of the bill in this case. The bill sets up the record as it existed before the attempted amendment, assails the judgment as void, and charges that the cause had been abandoned by the plaintiff.

As the record, as then made up, was the chief cause for filing the bill, it is certainly anomalous practice to amend it for the purposes of the trial, and without any notice.

But what does the amendment accomplish ? What purpose does it subserve ? What benefit is it to any party that there should be a sufficient certificate of publication, if no judgment is rendered ?

The apparent judgment of 1860 was not a judgment in 1870 ; it had been reversed ; the reversal was an official declaration that it was false. It was no longer a conclusion of law upon facts found or admitted, or upon default. The amended record, therefore, could have no application to this reversed judgment. It could give neither truth nor vitality to it.

As the effect of the reversal was the annulment of the judgment, it was not revived by the amendment. The proof submitted ten years before had passed from the memory of the court, the note had been taken from the files, and, in fact, there was no record of the judgment remaining in the circuit court. The judgment, wholly reversed on error, would not even have been a defense to a subsequent suit for the same cause of action. *Smock* v. *Graham*, 1 Black. 314.

The proper course, upon a reversal of the judgment, would have been to re-docket the cause in the court below, and by proof upon a trial, or by default, obtain another judgment. Instead of pursuing that course, we think that there was a total abandonment of the cause.

Upon remandment of the cause, appellant was in court by operation of the writ of error sued out and prosecuted by him, and a trial might have been had. *Reaugh* v. *McConnel*, 36 Ill. 373.

This course was not adopted. The cause went off the docket for five years, and appellant was entitled to notice of the motion to reinstate. *Mattoon* v. *Hinckley*, 33 Ill. 208.

The want of notice is not aided in this case by the presumptions implied by law in favor of the regularity of the action of superior courts. At the time of the amendment, the adjudication was in relation to the same subject matter which was under consideration when the reversed judgment was obtained.

The inquiry was as to the jurisdiction of the court in the attachment case. It was, therefore, not in the exercise of its general powers, but of a special statutory authority given by

the attachment law.   By virtue of that law alone did the suit commence and progress.   The reversal did not change it from a statutory to a common law proceeding.  Lapse of time could not do it.   Motions, however numerous and varied, could not effect a change.   The proceeding had its beginning and termination only by authority of the statute.

The rule, therefore, as to inferior courts, must apply, and the record should show, affirmatively, that notice was given.

Upon the hearing in this case, the deposition of the publisher of the paper was read in evidence to establish the fact of publication.

The adoption of such a rule would destroy every safeguard which the law has thrown around purchasers at judicial sales; make records mere useless things; unsettle titles; and open wide the door to fraud and perjury.

The stability and sanctity of a judicial sentence would then depend, not upon the sure records of the courts, but upon the frail and uncertain memory of witnesses.   If defects can thus be supplied, completeness can be pulled down. To-day a purchaser vests his money in land, relying upon an insufficient record as constituting no incumbrance ; ten years hence the record is aided by evidence on the trial of an action of ejectment, and he is ousted of his estate.   To-day a judgment, in any special proceeding, is no lien, on account of the absence of any notice in the record, or of any finding, and the party who purchases upon the faith of this insufficiency is surprised to learn that the printer of the newspaper, and not the clerk of the court, has been the custodian of the record for ten long years.

The practice would be dangerous, and is unsustained by any principle of law.

Appellant is entitled to the relief prayed for.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE SHELDON filed the following dissenting opinion:

I find myself unable to concur with the majority of the court in the opinion pronounced in this case.

The judgment of a court of general jurisdiction is here sought to be impeached and held a nullity in a collateral proceeding, for want of jurisdiction over the person of the defendant.

In such case I regard the rule to be, that it is not necessary that the jurisdiction should affirmatively appear, but that it will be presumed until the contrary is shown ; that, if jurisdiction do not appear upon the face of the record, the judgment will be reversed on error or appeal, but that it is not a nullity which may be disregarded in a collateral action. *Kemp's Lessee* v. *Kennedy,* 5 Cranch, 173 ; *McCormick* v. *Sullivant,* 10 Wheat. 192 ; *Foote* v. *Stevens,* 17 Wend. 483 ; *Hart* v. *Leixas,* 21 ib. 40; *The Chemung Bank* v. *Judson,* 4 Seld. 254; *Ruckman* v. *Cowell,* 1 Comst. 505 ; *Brown* v. *Wood,* 17 Mass. 67 ; *Reynolds* v. *Stansbury,* 20 Ohio, 344.

Such would seem to be the rule, and the distinction, when the question comes up directly upon appeal or by writ of error, or is raised collaterally, heretofore recognized in this State. *Kenney* v. *Greer,* 13 Ill. 432 ; *Dunbar* v. *Hallowell et al.* 34 Ill. 168 ; *Pensoneau* v. *Heinrich,* 54 Ill. 271.

The ground upon which the judgment here is declared to be a nullity, is, that it does not appear, by the certificate of publication of notice on file, that W. Harr & Son, whose names are subscribed to it, were the publishers or printers of the newspaper, or what was the date of the last paper which contained the notice. But the presumption of due publication of notice was strengthened by direct proof made on the hearing of this case, that W. Harr & Son were the publishers of the paper, and that the notice was published for the requisite length of time.

Such mode of proof in like cases has received the sanction of this court.

In *Pierce* v. *Carleton et al.*, 12 Ill. 363, the court says: "Waiving any discussion of the question whether the publication of notice is necessary to confer jurisdiction on the court in proceedings by attachment, it is enough for the decision of this case that it sufficiently appears from the record that the requisite notice was given. The record states that the plaintiffs filed proof of publication, and then follows a notice in due form, with a certificate of Houghton & Springer attached, in which they state that the notice was published in the "Northwestern Gazette" for four weeks successively, the first publication being on the 20th of March, 1850. The judgment against the defendant was entered on the 20th of May, so that sixty days intervened between the first insertion of the notice and the date of the judgment. It is true, that Houghton & Springer do not describe themselves in the certificate as publishers or printers of the "Gazette," nor do they state where the paper was published. But it was clearly competent for the plaintiffs to prove, by parol, that the paper was published in the State, and that Houghton & Springer were the publishers thereof. The presumption should be indulged that this was done." The question there came up collaterally.

Again, in *Dukes* v. *Rowley*, 24 Ill. 222, it is said: "It was objected that the certificate of publication was insufficient, as it failed to show that the persons who signed it were publishers of the newspaper in which the tax list was advertised. The evidence on the trial shows that they were the publishers, and the presumption is that the fact was proved to the court at the time the case was heard on the application for a judgment for the taxes. This is certainly true in a collateral proceeding, whatever might be the presumption, if it was questioned on error."

This was in support of a tax deed made under a judgment for taxes, rendered upon such notice. It is true, in this last case, it was recited on the face of the proceedings, "and,

whereas, due notice has been given of the intended application for a judgment against said lands," etc., but no stress whatever is laid upon the fact of such recital in the opinion, it not being even adverted to.

I do not regard this rule of presumption, as to jurisdiction, to be varied in this case, because the suit in which the judgment was rendered was commenced by attachment instead of by summons, or by holding to bail.

That circumstance, as I conceive, did not bring the case within that class of cases where a special statutory authority being conferred upon a court of general jurisdiction, to be exercised without the scope of its general and common law power, in a special and often summary manner, its proceedings in relation thereto are held to stand on the same footing with those of courts of inferior jurisdiction. *Harvey* v. *Tyler*, 2 Wallace, 329, and cases there cited ; *Pensoneau* v. *Heinrich*, *supra*, respected a record in a mechanics' lien suit, a proceeding quite as special as the one in question.

I can not but regard the present decision as at variance with the true rule as declared in former adjudications of the court, and that decisions, which form rules of property, should not be lightly disturbed.